**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **T.R.**, a minor, individually, by and through her parent, Barbara Galarza, and on behalf of all others similarly situated, | : | |
| | : | |
| | : | |
| | : | |
| **Barbara Galarza**, individually, and on behalf of all others similarly situated, | : | |
| | : | |
| | : | |
| **A.G.**, a minor, individually, by and through his parent, Margarita Peralta, and on behalf of all others similarly situated, | : | |
| | : | |
| | : | |
| | : | |
| **Margarita Peralta**, individually, and on behalf of all others similarly situated, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 15-04782-MSG |
| | : | |
| The School District of Philadelphia, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

**DILWORTH PAXSON LLP**

BY: /s/  Marjorie M. Obod
     Marjorie M. Obod, Esquire
     Patrick M. Northen, Esquire
     1500 Market Street, Suite 3500E
     Philadelphia, PA  19102-2101

     *Counsel for Defendant*

Dated: November 20, 2015

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................. 3

    A.  The Due Process Hearings of the Named Plaintiffs ........................................ 3

    B.  Plaintiffs' Allegations of Systemic Violations ................................................ 4

III.  STATUTORY FRAMEWORK ............................................................................ 6

IV.  ARGUMENT ........................................................................................................ 8

    A.  Plaintiffs' Systemic Claims Should be Dismissed Pursuant to Rule 12(b)(1). ............. 8

        1.  Rule 12(b)(1) Standard ............................................................................ 8

        2.  The Class Members have Failed to Exhaust their Administrative Remedies Under the IDEA. ........................................ 10

    B.  Plaintiffs' Systemic Allegations should be Dismissed for Failure to State a Claim Pursuant to Rule 12(b)(6). ........................................ 13

        1.  Legal Standard for Rule 12(b)(6) Motions ........................................ 13

        2.  Plaintiffs Fail to Allege Plausible Systemic Claims For Relief. ............... 14

    C.  Plaintiffs' Purported Systemic Claims Fail to Allege Relief that is Permissible Under the Applicable Regulations. ........................................ 18

    D.  Plaintiffs Fail to State a Claim Under Section 504 of Rehabilitation Act, Americans with Disabilities Act as Amended, and 22 Pa. Code Chapter 15 (Counts Three and Seven). ........................................ 21

    E.  Plaintiffs Fail to State a Claim for a Violation of the Equal Education Opportunity Act (Count Four). ........................................ 23

    F.  Plaintiffs Fail to State a Claim for a Violation of Title VI of the Civil Rights Act of 1964 (Count Five). ........................................ 24

V.  CONCLUSION ..................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

### <u>CASES</u>

*A.W. ex rel. H.W. v. Middletown Area Sch. Dist.,*
    No. 13-cv-2379, 2015 WL 390864 (M.D. Pa. Jan. 28, 2015) ................................. 6

*Abdullah v. Small Bus. Banking Dep't of Bank of Am.,*
    No. 13-cv-305, 2013 WL 1389755 (E.D. Pa. Apr. 5, 2013) ..................................... 24

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ................................................................................................ 25

*Amor v. Dodds,*
    No. 09-cv-1340, 2009 WL 3720644 (M.D. Pa. Nov. 4, 2009) ................................. 5

*Anderson v. District Bd. of Trustees of Cent. Florida Cmty. College,*
    77 F.3d 364 (11th Cir. 1996) ................................................................................... 5

*Andrew M. v. Delaware County Office of Mental Health and Mental Retardation,*
    490 F.3d 337 (3d Cir. 2007) ................................................................................... 22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................... 14, 15

*Ass'n for Cmty. Living in Colorado v. Romer,*
    992 F.2d 1040 (10th Cir. 1993) ............................................................................... 9

*Batchelor v. Rose Tree Media Sch. Dist.,*
    759 F.3d 266 (3d Cir. 2014) ............................................................................... 6, 13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................... 14, 15

*Beth V. v. Carroll,*
    87 F.3d 80 (3d Cir. 1996) ........................................................................................ 9

*Blunt v. Lower Merion Sch. Dist.,*
    559 F. Supp. 2d 548 (E.D. Pa. 2008) ............................................................... 10, 15

*Buskirk v. Apollo Metals,*
    307 F.3d 160 (3d Cir. 2002) ................................................................................... 21

*Canton Bd. of Educ. v. N.B.,*
    343 F. Supp. 2d 123 (D. Conn. 2004) .................................................................... 15

118715328_1

*CG v. Pa. Dep't of Educ.*,
   734 F.3d 229 (3d Cir. 2013) ............................................................. 6, 7, 22

*Charlene R. v. Solomon Charter Sch.*,
   63 F. Supp. 3d 510 (E.D. Pa. 2014) ...................................................... 20

*Christensen v. Harris Cnty.*,
   529 U.S. 576 (2000) ............................................................................ 17

*Deerfield Hutterian Ass'n v. Ipswich Bd. of Ed.*,
   468 F. Supp.1219, 1231 (D.S.D. 1979) ............................................. 23

*Doe By & Through Brockhuis v. Arizona Dep't of Educ.*,
   111 F.3d 678 (9th Cir. 1997) ......................................................... 15, 16

*Evancho v. Fisher*,
   423 F.3d 347 (3d Cir. 2005) ............................................................... 13

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ............................................................... 14

*Gaul v. Lucent Techs. Inc.*,
   134 F.3d 576 (3d Cir. 1998) ............................................................... 21

*Geis v. Bd. of Educ. of Parsippany-Troy Hills*,
   774 F.2d 575 (3d Cir. 1985) ................................................................. 6

*Gould Elecs., Inc. v. United States*,
   220 F.3d 169 (3d Cir. 2000) ................................................................. 8

*Grieco v. New Jersey Dep't of Educ.*,
   No. 06-cv-4077, 2007 WL 1876498 (D.N.J. June 27, 2007) ......................... 9, 11, 12

*Heldman v. Sobol*,
   962 F.2d 148 (2d Cir. 1992) ............................................................... 12

*J.D.G. v. Colonial School Dist.*,
   748 F. Supp. 2d 362 (D. Del. 2010) ................................................ 15, 16

*J.T. ex rel. A.T. v. Dumont Pub. Sch.*,
   533 F. App'x 44 (3d Cir. 2013) ................................................. 7, 9, 15, 16

*K.A.B. ex rel. Susan B. v. Downington Area Sch. Dist.*,
   No. 11-cv-1158, 2013 WL 3742413 (E.D. Pa. July 16, 2013) ................... 23, 24, 25

*K.K. ex rel. L.K. v. Pittsburgh Pub. Sch.*,
   590 F. App'x 148 (3d Cir. 2014) ............................................................. 7

iii

*Kevin M. v. Bristol Twp. Sch. Dist.*,
    No. 00-cv-6030, 2002 WL 73233 (E.D. Pa. Jan. 16, 2002)....................................... 17

*Komninos v. Upper Saddle River Bd. of Educ.*,
    13 F.3d 775 (3d Cir. 1994) ............................................................................... 7, 8

*Lamberson v. Pa.*,
    561 F. App'x 201 (3d Cir. 2014) ........................................................................... 22

*Morton Cmty. Unit Sch. Dist. No. 709 v. J.M.*,
    986 F. Supp. 1112 (C.D. Ill. 1997), *aff'd*, 152 F.3d 583 (7th Cir. 1998)................................ 21

*Mrs. M v. Bridgeport Bd. of Educ.*,
    96 F. Supp. 2d 124 (D. Conn. 2000).................................................................... 9, 10, 11, 12

*Mumid v. Abraham Lincoln High Sch.*,
    618 F.3d 789 (8th Cir. 2010) ............................................................................... 24

*Oberti v. Bd. of Educ.*,
    995 F.2d 1204 (3d Cir. 1993) ............................................................................... 17

*P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*,
    No. 2:11-cv-04027, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011) ........................................... 9

*Powell v. DeCarlo*,
    No. 12-cv-762, 2012 WL 3104839 (E.D. Pa. July 31, 2012) ................................................. 25

*R.P.-K ex rel. C.K. v. Dep't of Educ., Hawaii*,
    No. 10-cv-436 DAE, 2012 WL 1082250 (D. Haw. Mar. 30, 2012).......................................... 20

*Rancocas Valley Reg'l High Sch. Bd. of Educ. v. M.R.*,
    380 F. Supp. 2d 490 (D. N.J. 2005) ....................................................................... 19

*Ridgewood Board of Education v. N.E.*,
    172 F.3d 238 (3d Cir. 1997) ............................................................................... 22

*Sch. Dist. of Philadelphia v. Dep't of Educ.*,
    92 A.3d 746 (Pa. 2014)..................................................................................... 20

*Se. Pa. Transp. Auth. v. Gilead Sciences, Inc.*,
    No. 14-cv-6978, 2015 WL 1963588 (E.D. Pa. May 4, 2015)................................................. 24

*Turner v. Hershey Chocolate U.S.*,
    440 F.3d 604 (3d Cir. 2006) ............................................................................... 21

*Wilson v. Sch. Dist. Of Philadelphia*,
    195 A. 90 (Pa. 1937)...................................................................................... 18, 19

iv

## FEDERAL STATUTORY AUTHORITIES

20 U.S.C. § 1400(d)(1)(A) ................................................................................. 6

20 U.S.C. § 1415 ................................................................................. 1, 7, 8, 13

20 U.S.C. § 1703 ................................................................................. 8, 23

42 U.S.C. § 2000d ................................................................................. 8, 24

## STATUTORY AUTHORITIES

22 Pa. Code Chapter 14. ................................................................................. passim

22 Pa. Code Chapter 15 ................................................................................. passim

## FEDERAL RULES AND REGULATIONS

Fed.R.Civ.P. 12(b)(6) ................................................................................. passim

## OTHER AUTHORITIES

DOJ Guidance,
    Fed. Reg. Vol. 67, No. 117 ................................................................................. 41463

## I.      INTRODUCTION

Plaintiffs' lawsuit attempts to use an appeal from the special education administrative proceedings of the two named minor Plaintiffs, T.R. and A.G (the "named Plaintiffs"), as a Trojan Horse for seeking system-wide relief that goes above and beyond what the School District of Philadelphia (the "School District" or "Defendant") is legally required to do.  Based upon the individual experiences of the named Plaintiffs, who allege that the School District failed to provide each of them with a "legally-mandated" Individualized Education Program ("IEP") process, Plaintiffs institute this class action seeking systemic relief based only on the conclusory allegation that every other Limited English Proficiency ("LEP") student in the School District is similarly situated.  However, no federal or state statute supports Plaintiffs' claim that complete translation of every IEP process document is required, and relevant Department of Justice ("DOJ") guidelines on translation requirements for LEP students and other covered individuals makes clear that the need for translation must be determined on a case-by-case basis.

The Court should dismiss Plaintiffs' claims for systemic relief for at least two reasons. First, the Court lacks subject matter jurisdiction over the Parent Class and Student Class members (collectively, the "Class Members") because they have failed to exhaust their administrative remedies as required by the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1415(i)(2)(A).  Plaintiffs attempt to circumvent the exhaustion requirement by styling this matter as a class action seeking systemic relief, but fail to point to any structural deficiency in a School District policy that violates the IDEA on a system-wide basis.  Rather, the determination as to whether each Class Member has a claim for relief under the IDEA involves a substantive inquiry into the unique factual circumstances of each case.  The School District and special education hearing officers are in the best position to make such individualized

determinations and to develop the factual record on a case-by-case basis.  Because the Class Members have failed to exhaust their administrative remedies, the Court should dismiss the claims brought on their behalf pursuant to Rule 12(b)(1).

Second, even if this Court does have jurisdiction, the Court should dismiss Plaintiffs' systemic claims pursuant to Rule 12(b)(6) because they fail to allege facts that give rise to a plausible systemic claim for relief under any of the asserted statutes.  Plaintiffs' conclusory allegations that the School District systemically violates the IDEA and the other asserted statutes and regulations are insufficient to allow the Court to draw an inference that Plaintiffs' claims for systemic relief are plausible.  Plaintiffs' allegations point to no School District policy that violates any of the asserted statutes, but rather rests upon threadbare recitals of facts that do little more than mirror the elements of each cause of action.  Further, the relief that Plaintiffs request is inappropriate as it asks this Court to engage in judicial lawmaking and create new substantive requirements under the IDEA.  Where there is already a detailed statutory framework in place that describes the requirements of a comprehensive law such as the IDEA, the Court should not engage in judicial legislation by implementing additional requirements.

Finally, Plaintiffs fail to allege *any* plausible claims for relief under Section 504 of Rehabilitation Act, the Americans with Disabilities Act as Amended, 22 Pa. Code Chapter 15, the Equal Education Opportunity Act, Title VI of the Civil Rights Act of 1964, or 22 Pa. Code Chapter 14.  As explained in detail below, the Court should dismiss these claims in their entirety pursuant to Rule 12(b)(6) because Plaintiffs fail to plead all the requisite claim elements and/or provide any factual support that could permit this Court to draw a reasonable inference that any of those claims are plausible.

## II.     FACTUAL BACKGROUND

### A.     The Due Process Hearings of the Named Plaintiffs

This class action stems from two individual matters concerning disabled minors T.R. and A.G. and their parents Barbara Galarza and Margarita Peralta, respectively.  T.R. is a 17-year-old tenth grade student who speaks a mixture of the English and Spanish languages and has been diagnosed with the learning disability ADHD.  Complaint at ¶ 16.  Through a series of twenty-three separate due process hearings, T.R. and her mother complained that the School District: 1) did not provide her parent with meaningful participation in the IEP Process by failing to provide appropriate translation services; 2) denied T.R. a free and appropriate public education ("FAPE"); and 3) inappropriately evaluated T.R. as having a disability.  Exh. A to Complaint at 2.  While the hearing officer recognized that the School District provided numerous translation services throughout the IEP Process in his "Findings of Fact" (*see*, *e.g.*, ¶¶ 17, 21, 22, 24-26, 28, 31, 33, 37-38, 43, 46, and 48), he concluded that the School District did not fully comply with its obligations under the IDEA in this particular instance.  *Id.* at 9-12.  The hearing officer then ordered, among other things, that the School District reevaluate T.R.'s disability and awarded T.R. compensatory education.  *Id.* at 13-14.

A.G. is an 18-year-old twelfth grade student whose native language is Spanish and is of limited English proficiency.  Complaint at ¶ 18.  A.G. and his mother filed a due process complaint on June 23, 2014.  *Id.* at ¶ 74.  A.G. engaged in a series of thirty due process hearings, during which he alleged that the School District: 1) violated its Child Find responsibilities; 2) denied meaningful parental participation; and 3) failed to provide an appropriate IEP or Section 504 Plan.  Exh. B to Complaint at 1-2.  Again, despite recognizing that the School District provided substantial translation services in his "Findings of Fact" (*see*, *e.g.*, ¶¶ 24, 25, 33, 37-40, 45, 48, 51, 53, 55, 62-63), the hearing officer concluded that under these particular circumstances

3

the School District did not provide A.G.'s mother with meaningful parental participation.  Exh. B

to Complaint at 11.  The hearing officer awarded A.G. compensatory education.  *Id*. at 14.

The parents also raised with the hearing officer whether the School District: 1) has a

systemic practice of failing to timely evaluate disabled students; and 2) fails to fully inform

parents of their rights where the parent does not speak English.  Exh. C to Complaint at 1-2.

Because the parents sought systemic relief, the hearing officer concluded that he did not have

"authority to make such findings" and dismissed the claims of systemic violations without

considering the plausibility of such claims.  *Id*. at 7.  On August 21, 2015, Plaintiffs filed this

action alleging systemic deficiencies under: 1) the IDEA (Counts One and Two); 2) Section 504

of Rehabilitation Act, the Americans with Disabilities Act as Amended, and 22 Pa. Code Chapter

15 (Counts Three and Seven); 3) the Equal Education Opportunity Act (Count Four); 4) Title VI

of the Civil Rights Act of 1964 (Count 5); and 5) 22 Pa. Code Chapter 14 (Count 6).

### B.      Plaintiffs' Allegations of Systemic Violations

In contrast to its factual allegations regarding the two specific situations of the named

Plaintiffs, the allegations supporting Plaintiffs' claims for system-wide relief are sparse.  In

general, Plaintiffs allege that the School District systemically denied the Class Members

meaningful participation in the IEP process, by not "timely and completely" translating IEP

process documents, evaluations, reevaluations, and by not providing sufficient oral interpretation

services.  *See* Complaint at ¶¶ 1, 3, 4, 7, 43, 45, 46, 50, 55, 56, 61, 78, 80, 82, 86, 98, 103, 106,

107.  The Complaint includes virtually no specific facts supporting these systemic claims.

Indeed, other than the individual allegations of the named Plaintiffs (*see*, *e.g.*, Complaint at ¶¶

62-77), the bulk of the Complaint consists of oft-repeated legal conclusions, such as the

accusations that the School District has not: 1) provided "legal mandated" translation services

(*see*, *e.g.*, Complaint at ¶¶ 8, 13, 45, 78, 79); 2) provided Class Members with "meaningful

participation" in the IEP process (*see*, *e.g.*, Complaint at ¶¶ 1, 4, 5, 7, 8, 13, 23, 26, 27, 57, 58, 64, 67, 78, 79, 81, 98, 100, 103); 3) "timely provide[d] completely translated documents," including regular education forms (*see*, *e.g.*, Complaint at ¶¶ 4, 5, 7, 13, 43, 45, 46, 48, 50, 55, 67, 73, 75, 80, 86, 91, 98, 99, 103, 106, 107, 110); or 4) taken "appropriate action" to overcome language barriers (*see, e.g.*, Complaint at ¶¶ 94, 95).

After stripping the Complaint of its legal conclusions and the assertions regarding only the named Plaintiffs, the remaining allegations regarding the School District's alleged systemic violations are almost entirely conclusory and do not permit an inference of any plausible claim under the asserted statutes.  Instead, they are merely general background facts, such as:[1]

- The School District includes students that are LEP and have disabilities.  *See*, *e.g.*, Complaint at ¶¶ 1, 42, 51, 52.

- During the 2012-2013 school year, the School District "only" ***orally*** interpreted 487 special education documents.  Additional special education documents may have been translated by an outside contractor, but the School District did not use the contractor during the following school year.  *See* Complaint at ¶¶ 53, 54.

- The School District employs 54-55 Bilingual Counseling Assistants that provide interpretation services but not translation services.  *See* Complaint at ¶ 53.

---

[1] Plaintiffs' Complaint is interspersed with factual assertions – most of which are not clearly tied to any legal violation.  *See Anderson v. District Bd. of Trustees of Cent. Florida Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996) ("Anderson's complaint is a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."); *see also Amor v. Dodds*, No. 09-cv-1340, 2009 WL 3720644, at *4 (M.D. Pa. Nov. 4, 2009) ("Given the convoluted nature of the factual allegations in the complaint, the incorporation by reference of all of those allegations into a count and an assertion that the defendants violated particular laws does not provide notice of what actions or inactions by the defendants the plaintiff is claiming violated those laws.").  Despite incorporating more than seventy-five Paragraphs of the Complaint by reference into each of their seven Counts, Plaintiffs still fail to assert any plausible claim for systemic relief.

- The School District has a Translation and Interpretation Center which routinely translates documents but has never completely translated an IEP in its entirety and parents cannot request translation services. *See* Complaint at ¶ 54.

- The School District has provided some oral interpretation during IEP team meetings. *See* Complaint at ¶ 57.

- The School District does not utilize the TransAct. *See* Complaint at ¶ 61.

## III. STATUTORY FRAMEWORK

The legal requirements related to special education services are set forth primarily in the IDEA. The IDEA is meant "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). The statute governs the affirmative duty of State and local educational agencies receiving federal financial assistance to provide a FAPE to disabled students. *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 234 (3d Cir. 2013). As part of this affirmative duty, "States must comply with detailed procedures for identifying, evaluating, and making placements for students with disabilities, as well as procedures for developing IEPs. They must also implement specified procedural safeguards to ensure children with disabilities and their parents are provided with due process." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271-72 (3d Cir. 2014).

"Chapter 14 of the Pennsylvania Code incorporates and implements the substantive provisions of the IDEA." *A.W. ex rel. H.W. v. Middletown Area Sch. Dist.*, No. 13-cv-2379, 2015 WL 390864, *10 (M.D. Pa. Jan. 28, 2015). Pennsylvania's standards for educational opportunities for handicapped students are incorporated into the IDEA and are enforceable in the federal courts. *See Geis v. Bd. of Educ. of Parsippany-Troy Hills,* 774 F.2d 575, 581 (3d Cir.

1985).  The IDEA requires the translation of certain notice and procedural safeguard documents, but gives school districts discretion to determine the extent that other IEP process documents must be translated to ensure meaningful participation.  *See, e.g.* 20 U.S.C. § 1415(c)(1)(A)-(B), (E)-(F).

The IDEA "establishes an elaborate procedural mechanism to protect the rights of" special needs children, including "the right to a due process hearing before an administrative official."  *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). Parties aggrieved by the findings of the administrative hearing officer have the right to bring a civil action in either state or federal court.  20 U.S.C. § 1415(i)(2)(A).  However, "it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court."  *J.T. ex rel. A.T. v. Dumont Pub. Sch.*, 533 F. App'x 44, 54 (3d Cir. 2013) (*quoting Komninos*, 13 F.3d at 778)).

Other statutes, such as the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 ("RA"), "embody the negative prohibition against depriving disabled students of public education" and "provide a remedy for [disability] discrimination."  *CG*, 734 F.3d at 234 (citation omitted).  In addition to violating the IDEA, failure to provide a FAPE "generally violates the ADA and RA because it deprives disabled students of a benefit that non-disabled students receive simply by attending school in the normal course—a free, appropriate public education."  *Id.* at 235.  "Pennsylvania has 'implement[ed] the statutory and regulatory requirements of [the RA]' at the state level through the enactment of [22 Pa. Code Chapter 15]." *K.K. ex rel. L.K. v. Pittsburgh Pub. Sch.*, 590 F. App'x 148, 153 n.3 (3d Cir. 2014) (quoting 22 Pa. Code § 15.1(a)).  Importantly, however, Chapter 15 is not meant "to preempt, create,

supplant, expand or restrict the . . . liabilities of . . . school entities beyond what is contemplated by [federal law]."  22 Pa. Code § 15.11(c).

Finally, like the ADA and RA, the Equal Education Opportunities Act of 1974 ("EEOA") and Title VI of the Civil Rights Act of 1964 ("Title VI") prohibit discrimination.  However, unlike the ADA and RA, which prohibit disability discrimination, the EEOA and Title VI prohibit discrimination on account of an individual's race, color, or national origin.  *See* 20 U.S.C. § 1703; 42 U.S.C. § 2000d.  The DOJ guidelines for Title VI instruct that the question of whether "to provide written translations of documents should be determined by the recipient on a case-by-case basis," after the consideration of four factors that ensure meaningful access of federally-funded programs to LEP persons.  *See* Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, Fed. Reg. Vol. 67, No. 117 at 41463 (June 18, 2002) (*hereinafter* "DOJ Guidance").

## IV.   ARGUMENT

### A.   Plaintiffs' Systemic Claims Should be Dismissed Pursuant to Rule 12(b)(1).

#### 1.   Rule 12(b)(1) Standard

To withstand a Rule 12(b)(1) challenge to subject matter jurisdiction, "[t]he plaintiff has the burden of persuasion to convince the court it has jurisdiction."  *Gould Elecs., Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).  Typically, for a district court to have subject matter jurisdiction, parties asserting claims under IDEA must first exhaust their administrative remedies.  *See* 20 U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action"); 20 U.S.C. § 1415(l); *see also Komninos*, 13 F.3d 775 at 778

(declaring that "it is clear from the language of [IDEA] that Congress intended plaintiffs to complete the administrative process before resorting to federal court").

Courts have crafted four limited exceptions to IDEA's exhaustion requirement: "(1) where exhaustion would be futile or inadequate; (2) where the issue presented is purely a legal question; (3) where the administrative agency cannot grant relief; and (4) when exhaustion would work severe or irreparable harm upon a litigant." *P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, No. 2:11-cv-04027, 2011 WL 5127850, at *6-7 (E.D. Pa. Oct. 31, 2011); *see also Beth V. v. Carroll*, 87 F.3d 80, 88–89 (3d Cir. 1996). In some situations, plaintiffs need not exhaust their administrative remedies if "they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process." *Beth V.*, 87 F.3d at 89.

The systemic exhaustion exception "flows implicitly from, or is in fact subsumed by, the futility and no-administrative-relief exceptions." *Id.* However, "framing a complaint as a class action challenge to a general policy does not automatically convert the case into the kind of systemic violation that renders the exhaustion requirement inadequate or futile." *J.T. ex rel. A.T.*, 533 F. App'x at 54 (quoting *Grieco v. New Jersey Dep't of Educ.*, No. 06-cv-4077, 2007 WL 1876498, at *9 (D.N.J. June 27, 2007)); *see also Ass'n for Cmty. Living in Colorado v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993); *Mrs. M v. Bridgeport Bd. of Educ.*, 96 F. Supp. 2d 124, 135 (D. Conn. 2000). Further, "[p]laintiffs cannot overcome the clear emphasis on the claims of the individual students by including conclusory allegations of some systemic deficiencies. . . . Allowing plaintiffs to bypass the administrative process by merely including conclusory allegations of systemic deficiencies would permit the exception to the exhaustion

requirement to swallow the rule." *Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp.2d 548, 559 (E.D. Pa. 2008).

> **2.   The Class Members have Failed to Exhaust their Administrative Remedies Under the IDEA.**

Requiring all putative Class Members to exhaust their administrative remedies in this case would "serve the underlying purposes of the IDEA's administrative scheme and assist federal courts by establishing a factual record reflecting agency experience." *Mrs. M*, 96 F. Supp. at 130.   An examination as to what documents must be translated (and what oral interpretation services must be provided) in order to afford "meaningful parental participation" in any given case would require the Court to undertake an evaluation of the particular circumstances relevant to each affected Class Member.

Indeed, for the individual matters of T.R. and A.G., the hearing officer was only able to conclude that the School District did not provide meaningful parental participation after considering detailed factual records that were developed after a series of twenty-three and thirty due process hearings, respectively.   Exh. A to Complaint at 1, "Findings of Fact" at 2-6; Ex. B to Complaint at 1, "Findings of Fact" at 2-7.   Despite ultimately concluding that the parents did not receive meaningful participation in these two instances, the hearing officer noted the School District's substantial efforts at compliance:

> the District put people in place so that the Parent could engage in dialogue during the meetings (either through Language Line or by having a BCA in the room). Moreover, the District fully translated its evaluations, IEPs and NOREPs for the Parent. However, the IEP and NOREP from the June 17, 2014 meeting ready in [mother's native language], at the time of the meeting, and were often provide later only after parental request. . . . *[The District] satisfied the IDEA's narrow translation requirements* but, even in doing so, did not satisfy the IDEA's requirements for meaningful parental participation during the June 17, 2014 meeting.

Exh. A to Complaint at 9-10 (emphasis added).

The nuanced nature of "meaningful parental participation," as well as the extensive scope of the hearing officer's factual inquiry, illustrate why courts have held that effective judicial review "needs the administrative process" to explore fully the technical issues involved and to "develop a complete factual record for each child."[2] *Id.* at 132. The issues raised in Plaintiffs' Complaint "are classic examples of the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record." *Greico*, 2007 WL 1876498, *9. Without the benefit of a full administrative record, the Court "cannot determine [ ] whether the thousands of children represented by the plaintiff class have been denied a free appropriate public education." *Id.* brackets in original).

Plaintiff Class Members attempt to sidestep their administrative exhaustion requirements under the IDEA by alleging systemic deficiencies.[3] However, Plaintiffs fail to point to any School District policy that violates the actual framework of the IDEA, such that the rights of the Class Members would be affected adversely. *See*, *e.g.*, *Mrs. M*, 96 F. Supp. 2d at 133 ("the Court determines that the plaintiffs' complaint in essence presents a challenge to the identification decisions made by the [Bridgeport Board of Education] with respect to certain children and not to the actual framework under which the identification decisions were made."). Rather, as in the *Mrs. M* case, Plaintiffs' challenge is really "to the *substantive determinations* reached by the [School District] concerning [the named Plaintiffs], not to the *structure* of the system under which the identification was made." *Id.* (emphasis in original).

---

[2] Such approach also would promote judicial efficiency by giving the School District the opportunity to work directly with the individual Class Members to determine whether judicial – or even administrative – intervention is required in each particular case. *Greico*, 2007 WL 1876498, *9.

[3] Plaintiffs do not dispute that the named Plaintiffs have properly exhausted their administrative remedies and are entitled to appeal the specific relief awarded by the hearing officer. The Complaint, however, exclusively requests systemic relief and does not make clear what if any relief the named Plaintiffs are seeking individually.

11

The so-called systemic violations which Plaintiffs seek to remedy are exactly the "type of claim which w[ere] intended by Congress to be addressed on a case-by-case basis, with the needs of the particular child determined by the child's parents and educators." *Id.*; *see also Heldman v. Sobol*, 962 F.2d 148, 150 (2d Cir. 1992). Still, Plaintiffs style this matter as a class action in an effort to bring "one lawsuit despite the unique circumstances and needs of each child and without first attempting to have the identification issues explored by each child's parents, educators, and [] hearing officers." *Id.; see also Grieco*, 2007 WL 1876498 at *8 ("simply by styling a case as a putative class action should not excuse compliance with the required exhaustion of administrative procedures under the IDEA") (quoting *Mrs. M*, 96 F. Supp. at 135). In *Grieco*, the court found that "[a]n individualized fact-intensive inquiry with the benefit of agency expertise and a fully developed administrative record as to each student is required to answer the question whether each student's IEP provides the appropriate accommodations in the least restrictive environment." *Id*. at 9.

Similarly, this case requires a fact-intensive inquiry with the benefit of agency expertise and a fully developed administrative record to answer the question of whether each Class Member was adequately evaluated for LEP and/or was able to meaningfully participate in the IEP process. *See id.* ("To permit plaintiffs to circumvent the exhaustion requirement by merely alleging a systematic failure, without any logical mechanism to draw reasonable conclusions about individual needs with respect to such a large category of students, would undermine the IDEA and rationale for the exhaustion requirement."). Plaintiffs' request for systemic relief disregards the individualized and fact-intensive nature of the IDEA. To assess whether the School District is in compliance with the IDEA, it is necessary to inquire into the specific needs of each particular Class Member and determine whether the agency responded appropriately

12

under the circumstances.  These inquiries must be explored through the administrative process and to the extent required, individualized relief must be crafted.  Therefore, because the Class Members failed to exhaust their readily available administrative remedies (assuming for the sake of argument that there even exist any aggrieved individuals other than the named Plaintiffs), the Court should dismiss the IDEA claims brought on their behalf pursuant to Rule 12(b)(1).

Plaintiffs' claims brought under the RA, ADA, 22 Pa. Code Chapter 15, and 22 Pa. Code Chapter 14 must also fail.  When plaintiffs seek relief under federal laws protecting the rights of children with disabilities that is also available under IDEA, those plaintiffs must first exhaust their IDEA-created administrative remedies "to the same extent as would be required had the action been brought under" IDEA.  *See* 20 U.S.C. § 1415(l).  "Thus, determining if the IDEA's administrative process must be exhausted before bringing claims in federal court turns on whether the parties could have asserted the claims under the IDEA.  Intertwined with this inquiry is whether the claim could have been remedied by the IDEA's administrative process." *Batchelor*, 759 F.3d at 272-73.  Here, the relief sought in at least Counts Three, Six, and Seven is also available under the IDEA, and therefore, these Counts should also be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1).

**B.      Plaintiffs' Systemic Allegations should be Dismissed for Failure to State a Claim Pursuant to Rule 12(b)(6).**

**1.      Legal Standard for Rule 12(b)(6) Motions**

A court should grant a Rule 12(b)(6) motion to dismiss where the complaint fails to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  When ruling on a motion to dismiss, a court must accept all factual allegations as true and draw all reasonable inferences in a light most favorable to the plaintiff.  *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  A

118715328_1

well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Courts conduct a two-part analysis to determine whether dismissal is appropriate. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210–11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiffs have a "plausible claim for relief." *Id.* at 211; *see also Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 570. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 545.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). That a complaint pleads facts that "are merely consistent with" a defendant's liability, does not mean that it plausibly states a claim for relief. *Id.* (citations omitted). Even more importantly, as discussed below, the Plaintiffs' repeated allegations regarding what translation or interpretation is "legally mandated" is inconsistent with what the IDEA actually requires. Thus, for good reason, the assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.*

**2.      Plaintiffs Fail to Allege Plausible Systemic Claims For Relief.**

After applying the *Iqbal/Twombly* standard, and separating Plaintiffs' factual and legal allegations, each of Plaintiffs' seven Counts fails to state facts sufficient for a Court to infer a plausible systemic claim for relief. *Fowler*, 578 F.3d at 210; *see also* Section II(B) above. Plaintiffs' systemic claims allege that the School District denied Class Members of meaningful participation in the IEP process, including by not completely translating IEP process documents,

14

evaluations, reevaluations, and by not providing oral interpretation services.  These claims must fail because Plaintiffs have not alleged facts that could plausibly support such broad, systemic violations.  For a claim to be "systemic," courts hold that it must "implicate[] the integrity or reliability of the IDEA dispute resolution procedures themselves, or require[] restructuring the education system itself in order to comply with the dictates of the Act."  *J.T. ex rel. A.T.*, 533 F.App'x at 54 (quoting *Doe By & Through Brockhuis v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997)).  On the other hand, a claim is not "systemic" if it "involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem."  *Id.*

Conclusory allegations of systemic violations are insufficient to survive a motion to dismiss.  *Blunt v. Lower Merion Sch. Dist.*, 559 F.Supp.2d 548, 559 (E.D. Pa. 2008); *see also J.D.G. v. Colonial School Dist.*, 748 F.Supp.2d 362 (D. Del. 2010) (finding allegations insufficient "to meet the threshold pleading requirements as required by *Iqbal* and *Twombly* sufficient to raise a systemic violation claim").  In *Blunt*, the district court ruled  that "Plaintiffs cannot overcome the clear emphasis on the claims of the individual students by including conclusory allegations of some systemic deficiencies."[4]  *Id.*

Here, Plaintiffs fail to point to any actual School District <u>policy</u> that violates any of the asserted statutes.  *See*, *e.g.*, *Doe By & Through Brockhuis*, 111 F.3d at 684 ("nothing suggest[ed] that the Department's neglect resulted from an agency decision, regulation, or other binding policy").  For example, Plaintiffs point to no School District policy that would prevent

---

[4] While *Blunt* addressed systemic allegations in the context of a 12(b)(1) motion based on a failure to exhaust administrative remedies, it is still instructive as to the plausibility of a claim for a systemic violation in the context of a motion to dismiss.  *See Canton Bd. of Educ. v. N.B.*, 343 F.Supp.2d 123, 127 (D. Conn. 2004) ("Although, the necessity of exhaustion in the cited cases is different than the present question, the courts examined the sufficiency of the claims of systemic violations and are thus instructive.").

meaningful participation or timely evaluations across the Parent and Student Classes such that it would "implicate[] the integrity or reliability of the IDEA dispute resolution procedures themselves, or require[] restructuring the education system itself in order to comply with the dictates of the Act." *J.T. ex rel. A.T.*, 533 F.App'x at 54 (quoting *Doe By & Through Brockhuis.*, 111 F.3d at 682).

Indeed, as shown in Section II(B) above, the vast majority of Plaintiffs' Complaint consists of legal conclusions and factual allegations that focus on the individual circumstances of the two named Plaintiffs. *See J.D.G.*, 748 F. Supp. 2d at 370 ("[T]he allegations are directed towards the individual claim of J.G. Hence, they fail to rise to a level of systemic proportions."). Plaintiffs' claims cannot properly be considered systemic, as they involve "only a substantive claim having to do with limited components of a program, and [] the administrative process is capable of correcting the problem." *J.T. ex rel. A.T.*, 533 F.App'x at 54. Plaintiffs' threadbare recital of the facts is not enough to raise Plaintiffs' likelihood of any successful systemic claim above a mere possibility, and thus, they should be dismissed pursuant to Rule 12(b)(6).

Rather than identifying any affirmative policy adopted by the School District, the Plaintiffs instead complain of the School District's refusal to adopt policies advocated by Plaintiffs. *See*, *e.g.*, Complaint at ¶ 55 ("the District has adopted a policy in which it does not timely and completely translate . . . IEP process documents . . . into the native languages spoken and/or read by LEP students and their parents.") However, Plaintiffs point to no authority that requires complete translation of all IEP process documents for meaningful participation, and it would make no sense for the Court to create such a rigid policy for the substantive and individualized inquiry as to whether each particular Class Member has been afforded meaningful participation in the IEP process.

16

During the administrative due process hearings, the hearing officer recognized that the IDEA "requires schools to facilitate meaningful parental participation in the IEP development process."  Exh. A to Complaint at 9.  However, whether "parental participation" is only "meaningful" when it includes the full translation of all IEP process documents, is a question of fact particular to the specific abilities of the parents.  For example, Plaintiffs' request for the mandatory translation of all documents makes no sense when a parent does not know how to read, or otherwise is not necessary to ensure meaningful parental participation.  Indeed, the hearing officer recognized that **"[u]nlike the strict translation rules, meaningful participation requires inquiry into the Parent's ability to participate in meetings without translation."** *Id*. (emphasis added). This is why the hearing officer limited his findings to the particular individuals involved: "<u>In this case</u>, it is not possible for the Parent to meaningfully participate . . . unless the documents presented at that meeting are fully translated."[5]  *Id*. (emphasis added).

Consistently, the DOJ guidelines instruct that the question of whether "to provide written translations of documents should be determined by the recipient on a case-by-case basis."[6]  *See* DOJ Guidance, Fed. Reg. Vol. 67, No. 117 at 41463.  While designed to be "flexible and fact-dependent," to ensure meaningful access to LEP persons, "the starting point is an individualized assessment that balances the following four factors: (1) The number or proportion of LEP persons eligible to be served or likely to be encountered by the program or grantee; (2) the frequency with which LEP individuals come in contact with the program; (3) the nature and

---

[5]  District courts have discretion to determine how much deference to accord to the administrative proceeding.  *See Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993); *see also Kevin M. v. Bristol Twp. Sch. Dist.*, No. 00-cv-6030, 2002 WL 73233, at *4 (E.D. Pa. Jan. 16, 2002) ("While the Court must give 'due weight' to the administrative record, it has discretion to determine how much weight is due in a given case.").

[6]  The Court should afford deference to the DOJ's guidelines.  *See, e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000) ("[A]n agency's interpretation of its own regulation is entitled to deference.").

118715328_1

importance of the program, activity, or service provided by the program to people's lives; and (4) the resources available to the grantee/recipient and costs."  *Id*.

For instance, the guidelines provide that non-vital information, which may be found, for example, "when the document is very large," need not be translated.  *Id*.  Likewise, a distinction should be made "between languages that are frequently encountered by a recipient and less-commonly encountered languages."  *Id*.  As the DOJ noted, many recipients of federal funds (such as the School District) "regularly serve LEP persons who speak dozens and sometimes over 100 different languages" and  "[t]o translate all written materials into all of those languages is unrealistic."  *Id*.

In short, Plaintiffs are essentially asking this Court to engage in judicial lawmaking by rewriting the IDEA and other state and federal statutes to impose bright-line translation obligations that are not legally required.  However, "[t]he courts are in no position to exercise control over schools and determine the policy of school administration."  *Wilson v. Sch. Dist. Of Philadelphia*, 195 A. 90, 97 (Pa. 1937).  Rather, such issues "must be left to persons of experience who have made a life study of it, and certainly is not to be subjected to the consideration of jurists who have little or no training to appraise school systems or their necessities."  *Id.*  Because the asserted statutes and regulations provide the School District and special education hearing officers with discretion to make such individualized determinations, and Plaintiffs point to no legal requirement that the School District systemically violates, the Court should dismiss Plaintiffs' systemic claims for failure to state a claim.

**C.  Plaintiffs' Purported Systemic Claims Fail to Allege Relief that is Permissible Under the Applicable Regulations.**

Similarly, Plaintiffs' requests for sweeping changes to the IDEA and other statutory framework is inappropriate relief for the Court to grant.  Where, as here, there is already a

detailed legislative system in place that describes the requirements of the law, the Court should not impose additional requirements. *See Rancocas Valley Reg'l High Sch. Bd. of Educ. v. M.R.*, 380 F. Supp. 2d 490, 493-94 (D. N.J. 2005) (holding that "a United States District Court is an inappropriate instrument to effect" an overhaul of the IDEA). For example, Plaintiffs request that this Court Order that the School District:

- "[A]dopt and implement a new written special education plan and District policy to provide legally mandated translation and sufficient interpretation services to members of the Parent Class and the Student Class." Request for Relief at ¶ 2.

- "[D]evelop a method and written protocol to proactively identify all LEP Parents who may need translation and interpretation services." Request for Relief at ¶ 3.

- "[T]imely translate and deliver all IEP process documents . . . as needed in the appropriate native language in advance of IEP meetings to ensure meaningful participation." Request for Relief at ¶ 4.

- "[N]otify all parents [in the parent's native language] at the time of enrollment of their right to receive translated IEP process documents and interpretation services. . . ." Request for Relief at ¶ 5.

- "[P]rovide notice [that student's entitled to an IDEA evaluation] . . . are entitled to certain documents in his or her native language…" Request for Relief at ¶ 6.

- Appoint Plaintiffs' counsel to monitor compliance. Request for Relief at ¶ 8.

Plaintiffs claim that such relief is "legally mandated" or necessary "to ensure meaningful participation," but cannot point to any statutory authority for this Court to enforce such claim. As the hearing officer recognized, the IDEA requires the translation of only certain notice and procedural safeguard documents. Exh. A to Complaint at 8. For other IEP documents, however,

19

the IDEA provides the School District with the discretion to determine when translation is necessary to ensure meaningful participation, based on the unique and individualized circumstances of each case. *Id.*

Plaintiffs proposed re-write of the IDEA would be incredibly burdensome for a School District that already financially strapped. Such relief, if granted, would require the translation of each and every IEP process document, even though not statutorily required. As Plaintiffs point out, each IEP process involves a myriad of documents, such as: IEPs; NOREPs; Procedural Safeguards Notices; IEP Team Meeting Invitations; Manifestation Determinations; Permission to Evaluate; Permission to Re-Evaluate, Evaluation Reports and Re-Evaluation Reports; Psychoeducational Reports; progress reports; and Medicaid Consent Forms. Complaint at ¶ 6. This process can include multiple IEPs on an annual basis; countless revisions, evaluations and reevaluations by school psychologists, speech therapists, occupational and physical therapists, vision and hearing therapists. Moreover, the requested relief would impose heightened obligations on the School District of Philadelphia that do not apply to the countless other public and charter schools in the region.[7]

Plaintiffs' Requests for Relief are plainly improper as they involve policy decisions reserved for the legislature. *See R.P.-K ex rel. C.K. v. Dep't of Educ., Hawaii*, No. 10-cv-436

---

[7] Finally, imposing extra-statutory requirements on the School District could have an adverse impact on Philadelphia students and their families. Philadelphia's elementary and secondary environment is uniquely situated to offer a diverse educational portfolio which includes over two-hundred public schools, private and parochial schools, and cyber charter schools. Philadelphia is also home to over eighty (80) charter schools, each of which is a separate LEA under IDEA. *See* Brief for Education Law Center – PA as *Amicus Curiae* at 9, 42, *Sch. Dist. of Philadelphia v. Dep't of Educ.*, 92 A.3d 746 (Pa. 2014) (No. 28 EAP 2013); *Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 519 (E.D. Pa. 2014) ("Pennsylvania has encouraged the growth of charter schools, which are considered to be public schools and LEAs under the IDEA."). Parents in Philadelphia regularly choose between these various options, selecting a school that will best meet the needs of their children and families at any given time. In addition, many school-age students with disabilities are educated outside the City limits, though they and their families remain in Philadelphia. This fluidity between schools can result in school-age children shifting enrollment from LEAs in Philadelphia to elsewhere in the Commonwealth and vice versa. If the Court were to impose extra-statutory requirements upon the School District, as Plaintiffs request, it would lead to an undesirable result, creating confusion for students and their families by subjecting them to potentially different standards depending on whether the student is being educated inside or outside the District's public school portfolio.

DAE, 2012 WL 1082250, at \*8 (D. Haw. Mar. 30, 2012) ("this Court may not rewrite the law or otherwise engage in an exercise of judicial legislation. . . . it is the role of Congress to legislate and make policy decisions.  Where, as in the case of the IDEA, Congress has given . . . some discretion in implementing the law, the exercise of that discretion is reserved to the Governor and the State Legislature."); *see also Morton Cmty. Unit Sch. Dist. No. 709 v. J.M.*, 986 F. Supp. 1112, 1124-25 (C.D. Ill. 1997), *aff'd*, 152 F.3d 583 (7th Cir. 1998) ("this Court cannot rewrite the IDEA.").   Because the system-wide judicial legislation requested by Plaintiffs is inappropriate, this Court should dismiss the Complaint, which demands only systemic relief.

> **D.**    **Plaintiffs Fail to State a Claim Under Section 504 of Rehabilitation Act, Americans with Disabilities Act as Amended, and 22 Pa. Code Chapter 15 (Counts Three and Seven).**

Counts Three and Seven must also be dismissed because they contain only legal conclusions without the factual support necessary for a plausible claim.  In addition, Plaintiffs' RA claim in Count Three must also fail because disability is not the "sole cause" of the alleged discrimination.

To state a plausible claim for relief under the ADA, a plaintiff must allege sufficient facts that permit the Court to make the inference that the plaintiff: "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse action because of that disability." *Turner v. Hershey Chocolate U.S.,* 440 F.3d 604, 611 (3d Cir. 2006) (quoting *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002) and *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).  Under Section 504 of the RA, a plaintiff must allege facts that permit the inference: "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the

school."[8]  *Andrew M. v. Delaware County Office of Mental Health and Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007) (quoting *Ridgewood Board of Education v. N.E.,* 172 F.3d 238, 253 (3d Cir. 1997)).

The only factual allegation under these statutes is that the School District allegedly failed to translate regular education forms, including homebound forms and related information. Complaint at ¶¶ 91, 110.  Otherwise, the allegations are purely legal conclusions that merely repeat the elements necessary to bring an ADA and/or RA claim.  Plaintiffs' threadbare allegations are insufficient to state claim because they do not contain facts from which the Court can infer a plausible cause of action under any of these statutes.

Further, in *CG v. Pa. Dep't of Educ.*, the Third Circuit explained the difference between the causation elements in the RA and the ADA. 734 F.3d 229, 235 (3d Cir. 2013).  According to the Court, "[t]he RA allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program *solely on the basis of disability*, while the ADA covers discrimination on the basis of disability, even if there is another cause as well."  *Id.* at 235-36 (emphasis added); *see also Lamberson v. Pa.*, 561 F. App'x 201, 207 (3d Cir. 2014) ("[A] disability must be the 'sole cause' of the alleged discrimination under the RA . . . .").  As the Third Circuit explained, "[b]ecause the RA's causation requirement requires disability to be the sole cause of discrimination, an alternative cause is fatal to an RA claim because disability would no longer be the sole cause."  *Id.* at 236 n.11.  Because Plaintiffs' claims do not allege discrimination based solely on disability, but rather discrimination based on limited English proficiency, the RA claim in Count Three must fail as a matter of law.

---

[8]  22 Pa. Code Chapter 15 is Pennsylvania's implementation of Section 504 of the Rehabilitation Act.  Plaintiffs bring claims under Chapter 15 in both Counts Three and Seven.  Defendant addresses both Counts in this Section.

E.    **Plaintiffs Fail to State a Claim for a Violation of the Equal Education Opportunity Act (Count Four).**

Plaintiffs' EEOA claim additionally fails because the Complaint does not adequately allege discrimination based on race, color, sex, or national origin.  The EEOA provides, "[n]o State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by—the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs."  20 U.S.C. § 1703(f).  "To state a plausible claim under the EEOA, Plaintiffs must allege sufficient facts that: "show '(1) language barriers; (2) defendant's failure to take appropriate action to overcome these barriers; and (3) a resulting impediment to student['s] equal participation in instructional programs.'"  *K.A.B. ex rel. Susan B. v. Downington Area Sch. Dist.*, No. 11-cv-1158, 2013 WL 3742413, *11 (E.D. Pa. July 16, 2013); *see also Deerfield Hutterian Ass'n v. Ipswich Bd. of Ed.*, 468 F. Supp.1219, 1231 (D.S.D. 1979).  Further, for the second element of the cause of action, "[a]s the text of the statute dictates, the defendant's failure to take appropriate action must be 'on account of . . . race, color, sex, or national origin.'"  *See id.* (granting judgment in favor of defendants on EEOA claim where plaintiffs failed to show that an educational opportunity was denied them on account of race, color, sex or national origin).

Here, Plaintiffs' entire allegation is a legal conclusion based on a false premise. Complaint at ¶ 95.  Without citing to any legal authority, Plaintiffs allege that the School District's "failure" must have been based on the Student Class's national origin simply because their English proficiency is limited.  However, as the Eastern District of Pennsylvania explained in the *K.A.B. ex rel. Susan B.* case, **"discrimination based on English proficiency is not the same as discrimination based on national origin."**  *K.A.B. ex rel. Susan B.*, 2013 WL 3742413 at *12 (emphasis added); *see also Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 795 (8th

Cir. 2010).  Plaintiffs, therefore, plead no facts upon which the Court can infer that the School District's alleged failure was on account of "race, color, sex, or national origin." *Id*.  Without some additional factual allegation tying the School District's alleged failure to the Student Class's national origin, Plaintiffs cannot state a plausible claim under the EEOA, and the Court should dismiss Count Four pursuant to Rule 12(b)(6).

### F. Plaintiffs Fail to State a Claim for a Violation of Title VI of the Civil Rights Act of 1964 (Count Five).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  To state a plausible claim for relief under Title VI, a plaintiff must allege facts that permit the Court to infer that the plaintiff: "(1) was a member of a protected class, (2) qualified for the benefit or program at issue, (3) suffered an adverse action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *See Se. Pa. Transp. Auth. v. Gilead Sciences, Inc.*, No. 14-cv-6978, 2015 WL 1963588, *8 (E.D. Pa. May 4, 2015) (citation omitted).

Plaintiffs' Title VI claim is not plausible because it fails to allege that the Plaintiffs are a member of a protected class (race and/or national origin).  *See Abdullah v. Small Bus. Banking Dep't of Bank of Am.*, No. 13-cv-305, 2013 WL 1389755, *3 (E.D. Pa. Apr. 5, 2013), *aff'd*, 532 F. App'x 89 (3d Cir. 2013) (dismissing Title VI claim where the amended complaint failed to identify a suspect class).  Once again, the allegation that certain Plaintiffs are LEP is not enough to show that they are part of a protected class.  *See* Complaint at ¶ 102; *see also K.A.B. ex rel. Susan B.*, 2013 WL 3742413 at *10 (quoting *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 795 (8th Cir. 2010)) ("While Title VI prohibits discrimination on the basis of national

24

origin, language and national origin are not interchangeable.  A policy that treats students with limited English proficiency differently than other students in the district does not facially discriminate based on national origin.").

Finally, to the extent Plaintiffs are attempting to bring a cause of action based on violations of regulations promulgated pursuant to Section 602 of Title VI (*See* Complaint at ¶ 101), those claims must fail because Section 602 regulations "cannot be enforced through a private cause of action."  *Powell v. DeCarlo*, No. 12-cv-762, 2012 WL 3104839, *3 (E.D. Pa. July 31, 2012) (citation omitted); *see also Alexander v. Sandoval*, 532 U.S. 275, 293 (2001) ("Neither as originally enacted nor as later amended does Title VI display an intent to create a freestanding private right of action to enforce regulations promulgated under § 602. We therefore hold that no such right of action exists.").  Therefore, the Court should dismiss Plaintiffs' Title VI claims pursuant to Rule 12(b)(6).

## V.   CONCLUSION

For the above stated reasons, Defendant respectfully requests the Court grant its Motion to Dismiss.

DILWORTH PAXSON LLP


/s/  Marjorie M. Obod
        Marjorie M. Obod, Esquire
        Patrick M. Northen, Esquire
        1500 Market Street, Suite 3500E
        Philadelphia, PA  19102-2101
        *Counsel for Defendant*

Dated: November 20, 2015

## <u>CERTIFICATE OF SERVICE</u>

I, Marjorie M. Obod, Esquire, hereby certify that on the 20th day of November, 2015, I caused a true and correct copy of the foregoing MOTION TO DISMISS PLAINTIFFS' COMPLAINT to be filed electronically, made available for viewing and downloading from the CM/ECF system, and to be served electronically via the CM/ECF system and/or via first class mail, postage prepaid, upon the following:

Sonja Kerr, Esquire
Michael Churchill, Esquire
Public Interest Law Center of Philadelphia
1709 Benjamin Franklin Parkway, 2nd Floor
Philadelphia, PA  19103

Maura McInerney, Esquire
Education Law Center
1315 Walnut Street, 4th Floor
Philadelphia, PA  19107

Paul H. Saint-Antoine, Esquire
Chanda A. Miller, Esquire
Aviva H. Reinfeld, Esquire
Lucas B. Michelen, Esquire
Drinker, Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103

/s/ Marjorie M. Obod
Marjorie M. Obod

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **T.R.**, a minor, individually, by and through her parent, Barbara Galarza, and on behalf of all others similarly situated, | : <br> : <br> : <br> : |
| **Barbara Galarza**, individually, and on behalf of all others similarly situated, | : <br> : <br> : |
| **A.G.**, a minor, individually, by and through his parent, Margarita Peralta, and on behalf of all others similarly situated, | : <br> : <br> : <br> : |
| **Margarita Peralta**, individually, and on behalf of all others similarly situated, | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | :    Civil Action No. 15-04782-MSG |
| The School District of Philadelphia, | : <br> : |
| Defendant. | : |

<u>**PROPOSED ORDER**</u>

     **AND NOW**, this _____ day of December 2015, it is hereby **ORDERED** that

Defendant's Motion to Dismiss Plaintiffs' Complaint is hereby **GRANTED** with prejudice.


                                   **BY THE COURT**


                               _____
                               Hon. Mitchell S. Goldberg